1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

TONY HOLT,

NO.  C16-1406-JPD

9

Plaintiff,

10

v.

ORDER REMANDING FOR AN
AWARD OF BENEFITS

11

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

12

Defendant.

13

14

        Plaintiff Tony Holt appeals the final decision of the Commissioner of the Social

15

Security Administration ("Commissioner") which denied in part his application for

16

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17

§§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18

forth below, the Commissioner's decision is REVERSED and this case is REMANDED for an

19

award of benefits.

20

21

22

23

24

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted for Carolyn W. Colvin as defendant in this suit.  The Clerk is directed to update the
docket, and all future filings by the parties should reflect this change.

ORDER - 1

1

## I.    FACTS AND PROCEDURAL HISTORY

2      At the time of plaintiff's first administrative hearing, plaintiff was fifty-two years old.

3  Administrative Record ("AR") at 50.  He is currently fifty-seven years old, and has a high

4  school education.  AR at 50.  Plaintiff testified that he worked for the railroad as a laborer

5  when he was approximately twenty years old, worked as a dishwasher in a restaurant for a

6  short period of time in his thirties, and did some part-time work as a server in an adult family

7  home in his forties.  AR at 1282-85.  Plaintiff has had no work amounting to substantial gainful

8  activity within the last fifteen years.  AR at 22, 2023, 2028.

9      On September 24, 2009, plaintiff filed a claim for SSI payments, and his amended

10 alleged onset date is the date of filing.  AR at 55, 125.  Plaintiff asserts that he is disabled due

11 to borderline intellectual functioning, depression, anxiety, knee pain, diabetes, thyroid

12 problems, kidney disease, and heart disease.  AR at 98, 1288, 1292.  The Commissioner denied

13 plaintiff's claim initially and on reconsideration.  AR at 20.  Plaintiff requested a hearing,

14 which took place on November 15, 2011.  AR at 43-75.  On December 6, 2011, the ALJ issued

15 a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff

16 could perform a specific job existing in significant numbers in the national economy.  AR at

17 17-33.  The Appeals Council denied plaintiff's request for review, AR at 1-5, making the

18 ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. §

19 405(g).

20     Plaintiff appealed to this Court.  AR at 1376-83.  In October 2013, the Court granted

21 the Commissioner's motion to remand the case for further evaluation of the medical opinion

22 evidence.  AR at 1385–89.  Plaintiff argued that he meets Listing 12.05(C), and was therefore

23 entitled to an award of benefits.  AR at 1385.  The Court found that although it did appear that

24 plaintiff met the first two requirements of the listing, on remand the ALJ needed to further

ORDER - 2

develop the record and re-evaluate whether plaintiff satisfies all the requirements of Listing 12.05(C). AR at 1389. The Court noted that plaintiff's brief did not address the final requirement of Listing 12.05(C), *i.e.*, whether plaintiff had significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before the age of 22. AR at 1389. The Court noted that "because plaintiff does not address this requirement, this Court is left with no basis to conclude that this final requirement has been satisfied." AR at 1389.

A second administrative hearing was held on July 23, 2014. AR at 1251-1314. During that administrative hearing, plaintiff testified that he was enrolled in special education classes in school. AR at 1302. Plaintiff testified that he was "even picked up from my home here in Tacoma and taken to the grounds of Western State Hospital to a – it was like a school because they called it Child Treatment and Study Center." AR at 1303. He testified that he attended special education classes at the Western State Hospital "for about three years and then my mom…" AR at 1303. At this point, plaintiff's counsel interrupted his response and the ALJ indicated that "we've got to get moving" and "get on to some other stuff." AR at 1303. Thus, no further questioning was conducted about plaintiff's educational background and special education courses.

On January 13, 2015, the ALJ issued a decision again finding that plaintiff is not disabled. AR at 1221-43. With respect to Listing 12.05(C), the ALJ found that plaintiff's performance IQ score of 70 was not valid. AR at 1231.[2] This Court again reversed that decision and remanded for further proceedings in August 2015. AR at 2225. Specifically, the

---

[2] Specifically, the ALJ rejected plaintiff's IQ score because plaintiff had no mental health treatment or psychiatric hospitalizations, his GAF score of 48 was inconsistent with concurrent mental status exams, plaintiff did not exhibit "severe enough" mental health problems, and he could perform certain daily activities.

ORDER - 3

Court held that the ALJ erred by finding that plaintiff's IQ score of 70 was invalid, and that "the record also shows that he has a physical or other mental impairment imposing an additional significant work-related limitation" as demonstrated by the ALJ's finding at step two that plaintiff had several other physical and mental severe impairments. AR at 2219. However, the Court found that "while the record is clear with respect to these two requirements of the Listing, it is unclear as to the third requirement: that Mr. Holt's deficit manifested itself before age 22." AR at 2219.[3]

A third hearing before an ALJ was held on April 18, 2016. AR at 2146-2171. At the hearing, the ALJ and plaintiff's counsel agreed that the third requirement of Listing 12.05(C) was "the only issue" left to resolve on remand. AR at 2149-50. Plaintiff's counsel explained that "we have not been able to get any school records back that far. They just don't keep them back that far it's been our experience. And what we found out in Mr. Holt's case." AR at 2151. The ALJ opined that "if the District Court in this particular case had felt that there was strong enough evidence of that onset prior to age 22 they would have just awarded benefits. Because they certainly did reverse the prior rulings as to the IQ testing." AR at 2152.

In June 2016, the ALJ issued a decision finding that plaintiff was not disabled prior to January 23, 2014, the date plaintiff suffered a heart attack and his physical condition and functional capacity deteriorated. However, the ALJ found that plaintiff became disabled on the

---

[3] Specifically, the Court observed that plaintiff graduated from high school with a B average and attended special education classes for about three years. AR at 2219 (citing AR at 581, 1172). The Court also noted plaintiff's testimony that he lost some abilities after suffering a head injury in a car accident at age fourteen. AR at 2219 (citing AR at 584). However, the Court found that "the record regarding Mr. Holt's special education and head injury is skimpy at best, and the Court thus cannot say that all of the factual issues have been resolved and that it is clear Mr. Holt is entitled to benefits, under Listing 12.05C." AR at 2219.

date of his heart attack.  AR at 2019-30.  With respect to the issue of whether plaintiff met

Listing 12.05(C) prior to his heart attack, the ALJ made the following findings:

> Turning back to listing 12.05, the District Court held that the first two requirements of 12.05C have been met; that is, the claimant has a valid IQ score of 70 and additional physical and mental impairments imposing additional significant work-related limitations.  The District Court expressly declined to find that the third requirement was met since the evidence was unclear that the claimant's intellectual deficits manifested before age 22.  The District Court remanded the case for further administrative proceedings to develop evidence of intellectual deficits prior to age 22.  Unfortunately, the claimant provided no further evidence on that point, so I am left with the same quandary of insufficient evidence that the District Court was faced with.  As noted by the District Court, the record regarding the claimant's special education and childhood head injury is skimpy at best.  Hence, the evidence does not show that the severity of his borderline intellectual functioning satisfies the third requirement of section 12.05C, and I am continuing with the sequential evaluation. . . .

> As noted, although I accept the claimant's IQ score of 70, the evidence does not establish that his borderline intellectual functioning satisfies the requirements of 12.05C as the claimant provided no further evidence on whether his intellectual deficits manifested prior to age 22.  From a functional standpoint, his treatment history, his performance on mental status examinations, and other inconsistencies in the record as set forth in Judge Dantonio's decision do not support the claimant's allegations of incapacitating social and/or cognitive deficits.

AR at 2025-26.  Thus, the ALJ found that prior to January 23, 2014, there were other jobs

existing in significant numbers in the national economy that plaintiff could perform.  AR

at 2028-30.

When the Appeals Council did not assume jurisdiction of this case, the ALJ's decision

became the final decision of the Commissioner after the Court's remand.  *See* 20 C.F.R. §

416.1484(a).  Plaintiff now seeks review of the ALJ's June 2016 decision that plaintiff was not

disabled for the closed period from September 24, 2009 to January 22, 2014.  Dkt. 3.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).

1

III.    STANDARD OF REVIEW

2      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

3  social security benefits when the ALJ's findings are based on legal error or not supported by

4  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

5  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

6  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

7  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

8  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

9  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

10  53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

11  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

12  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

13  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

14  must be upheld.  *Id.*

15      The Court may direct an award of benefits where "the record has been fully developed

16  and further administrative proceedings would serve no useful purpose."  *McCartey v.*

17  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

18  (9th Cir. 1996)).  The Court may find that this occurs when:

19          (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
           claimant's evidence; (2) there are no outstanding issues that must be resolved
20          before a determination of disability can be made; and (3) it is clear from the
           record that the ALJ would be required to find the claimant disabled if he
21          considered the claimant's evidence.

22  *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

23  erroneously rejected evidence may be credited when all three elements are met).

24

IV.    EVALUATING DISABILITY

As the claimant, Mr. Holt bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[4]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments,

---

[4] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

impairment, the Commissioner moves to step three to determine whether the impairment meets

or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On July 1, 2016, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since at
any time relevant to this decision.

2.    The claimant has had the following severe impairments at all times
relevant to this decision:  left knee fusion osteochondromatosis status
post arthroscopy, depressive disorder, anxiety disorder, personality
disorder with antisocial traits, borderline intellectual functioning
versus cognitive disorder, alcoholic encephalopathy, alcohol abuse
currently in remission, and marijuana abuse currently in remission.
Beginning on the established onset date of disability, January 23,
2014, the claimant has also had the following severe impairments:

coronary artery disease status post myocardial infarction with stent placement, diabetes, and gastroesophageal reflux disease (GERD).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.  Prior to January 23, 2014, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b).  He could never crawl or climb ladders, ropes, or scaffolds.  He could occasionally climb ramps and stairs, balance, stoop, kneel, or crouch.  He was limited to occasional exposure to temperature extremes, to wetness, to vibration, and to pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation.  He was limited to occasional exposure to hazardous conditions such as proximity to unprotected heights and moving machinery.  He was limited to tasks that could be learned in 30 days or less involving no more than simple work-related decisions and few workplace changes.  He was limited to rare public contact (less than 5% of the workday).  He was limited to superficial interaction with coworkers; he was not well suited to a highly interactive or interdependent work group.

5.  Beginning on January 23, 2014, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a).  He could never crawl or climb ladders, ropes, or scaffolds.  He could occasionally climb ramps and stairs, balance, stoop, kneel, or crouch.  He was limited to occasional exposure to temperature extremes, to wetness, to vibration, and to pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation.  He was limited to occasional exposure to hazardous conditions such as proximity to unprotected heights and moving machinery.  He was limited to tasks that could be learned in 30 days or less involving no more than simple work-related decisions and few workplace changes). He was limited to rare public contact (less than 5% of the workday). He was limited to superficial interaction with coworkers; he was not well suited to a highly interactive or interdependent work group.

6.  The claimant has no past relevant work.

7.  Prior to the established disability onset date, the claimant was an individual closely approaching advanced age.  The claimant's age category has not changed since the established disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

10.   Prior to January 23, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.   Beginning on January 14, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

12.   The claimant was not disabled prior to January 23, 2014, but became disabled on that date and has continued to be disabled through the date of this decision.

13.   The claimant's substance use disorders are not a contributing factor material to the determination of disability.

AR at 2023-2030.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err by determining that plaintiff's intellectual impairment did not meet Listing 12.05(C)?

2.    Did the ALJ err in evaluating the opinion of Anna Espiritu, M.D.?

3.    Is plaintiff entitled to a finding of disability and an immediate award of benefits for the period of September 24, 2009 to January 22, 2014?

Dkt. 14 at 2; Dkt. 15 at 2.

## VII.    DISCUSSION

A.    The ALJ Erred by Finding that Plaintiff's Intellectual Impairment Did Not Meet All the Requirements of Listing 12.05(C)

    1.    Listing 12.05(C)

Step three of the sequential evaluation process requires the ALJ to determine whether plaintiff's impairments meet or equal any of the listed impairments set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The listings describe specific impairments in each of the body's major systems that are considered "severe enough

to prevent a person from doing most gainful activity." 20 C.F.R. §§ 404.1525, 416.925(a). Severe impairments must be "permanent or expected to result in death," or must last or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1525(a), 416.925(a). The ALJ's analysis at step three must rely only on medical evidence and not rely on age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Bates v. Barnhart*, 222 F.Supp.2d 1252, 1258 (D. Kan. 2002) (reversing the ALJ's decision that blended discussion of medical evidence and evidence he used to make his credibility assessment at step three, because "determinations at step three must be made purely on the medical evidence"). To be found disabled at step three, plaintiff must prove that he or she meets or equals each of the characteristics of a listed impairment. 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). A claimant who meets or equals a listing is presumed disabled at step three without further inquiry. 20 C.F.R. § 416.920(a)(4)(iii).

Plaintiff argues that the ALJ erred at step three by finding that his impairments did not meet the listing for intellectual disability/mental retardation, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).[5] The regulations provide that "[t]he structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria . . . [the] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P. App. 1 at §

---

[5] "Intellectual disability" was previously referred to as "mental retardation" in the regulations, and therefore caselaw uses both terms for this impairment. The Court finds the term "intellectual disability" more appropriate.

12.00(A).  The relevant portion of the 12.05(C) listing describes intellectual disability as a

condition characterized by

> significantly subaverage general intellectual functioning with
> deficits in adaptive functioning initially manifested during the
> developmental period; i.e., the evidence demonstrates or supports
> onset of the impairment before the age 22.  The required level of
> severity for this disorder is met when the requirements in A, B, C,
> or D are satisfied. . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70,
> and a physical or other mental impairment imposing an additional
> and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P. App. 1 at § 12.05.  Thus, Listing 12.05(C) requires an ALJ to find

that the plaintiff satisfies three elements: (1) a valid verbal, performance, or full scale IQ score

of 60 through 70; (2) a physical or other mental impairment imposing an additional and

significant work-related limitation of function; and (3) subaverage general intellectual

functioning with evidence of adaptive functioning deficits that manifested themselves before

the age of 22.

As discussed above, this Court previously held that plaintiff satisfied the first two

elements of the listing.  AR at 2219.  Specifically, the Court held that plaintiff's performance

IQ score of 70 was valid and "the record also shows that he has a physical or other mental

impairment imposing an additional significant work-related limitation."  AR at 2219.[6]  The

ALJ acknowledged this finding in his decision.  AR at 2025.

---

[6] Where multiple or conflicting IQ scores are available, the operative score for purposes
of determining whether a claimant's impairments meet or equal Listing 12.05 is the lowest
"valid verbal, performance, or full scale IQ" score the claimant has received.  *See Fanning v.
Bowen*, 827 F.2d 631, 633 (9th Cir. 1987); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §
12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test
administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler
series, we use the lowest of these in conjunction with 12.05.").  As a result, plaintiff's
performance IQ score of 70 constitutes his operative IQ score for purposes of listing 12.05(C).
In addition, a step two finding of a severe impairment by the ALJ satisfies the second prong of

1    Accordingly, the only remaining question with respect to step three is whether the ALJ

2    committed harmful error by concluding that the record does not support a finding that plaintiff

3    had adaptive functioning deficits that manifested before age 22.  AR at 2025 (ALJ's finding

4    that although this Court remanded the case for further proceedings "to develop evidence of

5    intellectual deficits prior to age 22," plaintiff provided no further evidence on that point and

6    therefore "the record regarding the claimant's special education and childhood head injury is

7    skimpy at best").  As discussed below, the Court finds that the ALJ erred.

8         2.    *The Record Contains Evidence of Significant Subaverage General*
               *Intellectual Functioning and Deficits of Adaptive Functioning that*
9              *Manifested Before Age 22*

10    Plaintiff contends that the ALJ erred by finding that plaintiff does not satisfy the third

11    element of Listing 12.05(C) because the ALJ (1) failed to consider plaintiff's functioning after

12    age 22 as evidence of his impairment; and (2) relied on the District Court's failure to engage in

13    fact-finding as evidence that plaintiff does not meet the listing.  Dkt. 14 at 4.  Specifically,

14    plaintiff asserts that circumstantial evidence is all that is required to establish that an

15    intellectual impairment began before age 22, and decision-makers may use their judgment to

16    infer when the impairment began.  *Id.* at 5 (citing *Hernandez v. Astrue*, No. 08-17511, 380

17    Fed.Appx. 699, 700, 2010 WL 2171012, *1 (9th Cir. 2010)).  Although school records can be

18    useful in determining the onset of an intellectual impairment, a person can meet Listing

19    12.05(C) even without those records.  Dkt. 14 at 5 (citing *York v. Colvin*, No. CV-11-201-

20    RHW, 2013 WL 1209842, at *5 (E.D. Wash. Mar. 25, 2013)).

21    As noted above, the diagnostic description of intellectual disability in the introductory

22    paragraph of Listing 12.05 provides that there must be evidence of "significantly subaverage

23

24    the 12.05 listing.  Here, the ALJ found that plaintiff had *eight* additional severe impairments
      prior to January 23, 2014.  AR at 2023.  Following that date, plaintiff had eleven.  AR at 2023.

general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age of 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.  In *Hernandez v. Astrue*, the Ninth Circuit Court of Appeals held that a plaintiff's post-developmental IQ scores can support an inference that subaverage functioning began during the development period.  Specifically, the court held that pursuant to the regulations, "evidence *from* the developmental period is not required in order to establish that the impairment began before the end of the developmental period; rather, the agency may use its judgment when current evidence allows it to infer when the impairment began." *Hernandez v. Astrue*, 380 Fed.Appx. 699, 700 (9th Cir. 2010) (citing the Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,753 (Aug. 21, 2000) (to be codified at 20 C.F.R. §§ 404, 416)).[7]  In addition to a claimant's IQ, the *Hernandez* court cited evidence that a claimant "repeated fourth grade, received poor grades in school, and did not attend high school" as evidence that the claimant's impairment began during the developmental period.  *Id.* at 701.

Several other circuits have gone further than the Ninth Circuit in *Hernandez*, and found that plaintiffs create a rebuttable presumption that their developmental IQ was the same as their current IQ when they present a valid IQ score from their post-developmental period.  *See e.g.*, *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) (absent contrary evidence, an IQ test taken after the insured period correctly reflects claimant's IQ during the insured period);

_____

[7] The revised criteria interpreting Listing 12.05 explain that the regulations do not "necessarily require evidence from the developmental period to establish that the impairment began before the end of the developmental period" and instead "permit us to use judgment, based on current evidence, to infer when the impairment began."  The revised criteria are available at https://www.federalregister.gov/articles/2000/08/21/00-19648/revised-medical-criteria-for-evaluating-mental-disorders-and-traumatic-brain-injury (last accessed April 4, 2017).

1    *accord Luckey v. U.S. Dep. of Health & Human Srvs.*, 890 F.2d 666, 668-69 (4th Cir. 1989)

2    (courts should assume IQ remains constant and that an absence of an IQ test during the

3    developmental period does not preclude a finding of retardation); *see also Guzman v. Bowen*,

4    801 F.2d 273, 275 (7th Cir. 1986) (per curiam) (IQ test taken after expiration of insured period

5    sufficient to establish IQ during insured period); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir.

6    2001) (presuming that a person's IQ remain stable over time in the absence of any change in

7    intellectual functioning); *but see Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)

8    (upholding ALJ's finding that claimant did not meet or equal the listing in part because

9    plaintiff's IQ testing was not contemporaneous with her developmental period); *Markle v.*

10   *Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003) (declining to create such a presumption).  The

11   Eleventh Circuit has held that claimants presumptively meet the 12.05(C) disability

12   requirements when they present a valid IQ score and evidence of an additional impairment.

13   *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001).

14           Courts that use a post-developmental IQ score to raise a rebuttable presumption that the

15   subaverage functioning existed during the developmental period implicitly base their decisions

16   on the medical fact that, absent some traumatic event, intelligence remains fairly constant

17   throughout one's life.  *See e.g., Talavera v. Astrue,* 697 F.3d 145, 152 (2nd Cir. 2012)

18   ("[A]bsent evidence of sudden trauma that can cause retardation, the [SSI claimant's adult] IQ

19   tests create a rebuttable presumption of a fairly constant IQ throughout her life."); *Hodges*, 276

20   F.3d at 1268-69.  The reason for this is because the requirements that a claimant's intellectual

21   disability arose before age 22 "seems intended to limit coverage to an innate condition rather

22   than a condition resulting from a disease or accident in adulthood." *Novy v. Astrue,* 497 F.3d

23   708, 709 (7th Cir. 2007) (citations omitted).  In addition, "there are many possible reasons why

24   an adult would not have obtained an IQ test early in life, so requiring a contemporaneous

qualifying test score would present intractable problems of proof in many cases of legitimate intellectual ability." *York*, 2013 WL 1209842, at *5 (citing *Talavera,* 697 F.3d at 152).

Although the Ninth Circuit has held that a post-developmental IQ score is relevant evidence that should be considered, the court has not held that it raises a rebuttable presumption that the claimant's subaverage functioning existed during the developmental period. However, in *Cauffman v. Astrue*, this Court previously held that a claimant's IQ score of 70 does create a rebuttable presumption that her subaverage functioning existed during the development period. *See Cauffman v. Astrue,* No. C10-281-JCC-JPD, 2010 WL 5464815, at *14-15 (W.D. Wash. Nov. 12, 2010). The Court also cited two examples of the types of evidence that might rebut such a presumption, but were not established in that particular case: (1) evidence of a traumatic event, or (2) evidence that the claimant's cognitive functioning had deteriorated over time. *Cauffman*, 2010 WL 5464815, at *9.

Consistent with our prior decision in *Cauffman*, the Court finds that there is a rebuttable presumption that plaintiff's IQ scores have remained constant throughout his life. In addition, plaintiff's medical records do not suggest that he suffered any great trauma or illness after age twenty-two which would account for his cognitive deficits and rebut the presumption of a stable IQ. As in *Hernandez* and *Cauffman*, the ALJ also failed to make any finding that plaintiff's cognitive functioning had deteriorated over time. As a result, plaintiff's valid performance IQ score of 70, coupled with the absence of any evidence of cognitive deterioration later in life, supports a finding that plaintiff manifested "significantly subaverage intellectual functioning" during his developmental period.

Plaintiff argues that, even if this Court did not find that his post-development IQ score created a rebuttable presumption, the ALJ erred in this case by failing to properly evaluate other circumstantial evidence in the record that satisfied the third prong of the listing.

1    Specifically, plaintiff contends that instead of focusing entirely on the lack of childhood school

2    or medical records (which were unavailable), AR at 2026, the ALJ should have considered and

3    discussed other evidence which indicated that plaintiff had "deficits in adaptive functioning"

4    and difficulty leading an independent life.  Specifically, plaintiff attended special education

5    classes at Western State Hospital for three years in reading and math (AR at 581, 1172, 1303),

6    has total lifelong earnings of only $5,106.56 and a poor work history (AR at 581, 1282, 1919,

7    2445), does not drive or have a driver's license (AR at 584, 1345-46, 2447), has never lived in

8    an apartment "totally on his own" without assistance from family members (AR at 51, 68-70),

9    qualified to live in an adult group home (AR at 2047), has never had any long-term romantic

10   relationships in his adult life (AR at 1918), and requires assistance from family members to

11   follow a schedule, pay bills, and maintain personal hygiene or else he struggles with

12   homelessness (AR at 438, 693, 1901, 2451, 2445-47).  Dkt. 14 at 7-8.

13           The Commissioner disagrees with some of plaintiff's cited evidence.  Dkt. 15 at 5.  For

14   example, the Commissioner asserts that some medical reports suggest that plaintiff once lived

15   with a woman when he was seventeen or eighteen, visits friends two or three times per week,

16   and has lived with a roommate who was reportedly a friend of 25 to 26 years.  AR at 581, 583,

17   1345.  The Commissioner asserts that plaintiff has been capable of performing a few "odd

18   jobs" throughout his life, such as serving food to his sister-in-law's clients in an adult family

19   home, and working as a dishwasher in a restaurant for approximately one year in his thirties.

20   AR at 1282-85.  The Commissioner also argues there is no documentation in the record

21   supporting plaintiff's counsel's representation to the ALJ that plaintiff qualified to live in an

22   adult home.  AR at 2047.  Although he cannot drive, plaintiff can use public transportation.

23   AR at 25-26, 28, 59, 157, 604, 775, 778, 781, 1229, 1347, 1357.  Finally, the Commissioner

24   contends that although plaintiff attended special education "early on" for math and reading,

plaintiff has stated that he ultimately graduated high school with a "B" average.  AR at 581

(March 2010 psychological evaluation recounting plaintiff's self-reported educational history).

The Commissioner asserts that "[i]t stands to reason that if Holt had subaverage intelligence in

the development period, he would have attended special education in more subjects throughout

his schooling, and would not have graduated high school with above-average marks.  For this

reason, Holt's claim that the circumstantial evidence discussed above supported the inference

that he had intellectual deficits in the development period is unpersuasive."  Dkt. 15 at 8.

Without more, the Court does not agree with the Commissioner's argument that

evidence that plaintiff "only" attended special education in two subjects, and reportedly

graduated high school with a "B" average, rebuts the presumption that his IQ score indicates he

was intellectually disabled during his developmental years.  Dkt. 15 at 9.[8]  Although some of

the Commissioner's points are well-taken, the Court nevertheless finds the record replete with

circumstantial evidence that plaintiff has a limited ability to lead an independent life, and has

"deficits in adaptive functioning."   It is undisputed that plaintiff attended special education

classes for three years at Western State Hospital, has had extremely low earnings in his

lifetime, a very poor work history (even if he performed a few odd jobs), has never obtained a

driver's license, and relies heavily upon his family members to follow a schedule, pay bills,

and care for himself.   Numerous other courts have considered similar evidence to conclude

that an impairment began during the development period.  *See Hernandez*, 380 Fed. Appx. at

701 (claimant had an IQ score of 64, repeated fourth grade, received poor grades in school, and

---

[8] The ALJ could have discussed and weighed the record evidence and made such a finding, but he did not.  The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009).

did not attend high school); *York*, 2013 WL 1209842, at *5 (claimant had an IQ score of 68, dropped out of school in the seventh grade, took special education classes throughout entire education, was functionally illiterate, and had no stable residence, lived with friends, and had no relevant past work experience); *Cauffman*, 2010 WL 5464815, at *4-8 (claimant had an IQ score of 70, attended special education classes in every subject from grades one through twelve, lived with her parents, could not drive a car and never obtained a driver's license, her work experience totaled one month, had moderate difficulties in social functioning); *Ware ex rel. v. Shalala*, 902 F. Supp. 1262, 1271 (E.D. Wash. 1995) (holding that a claimant's participation in special education classes can be indicative of deficits in adaptive functioning).

Finally, the Court agrees with plaintiff that the ALJ in this case appeared to rely too heavily upon the fact that the District Court had previously declined to award benefits.  This was evidenced from the ALJ's comments to plaintiff's counsel during the most recent administrative hearing that "if the District Court in this particular case had felt that there was strong enough evidence of that onset prior to age 22 they would have just awarded benefits. Because they certainly did reverse the prior rulings as to the IQ testing." AR at 2152.  It is well-established that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with the district court." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015).  Rather than simply relying on plaintiff's counsel to produce childhood academic records, the ALJ could have conducted further questioning of the plaintiff and further developed the record during the third administrative hearing.  In addition, when the ALJ learned that plaintiff's efforts to obtain childhood medical and school records were unsuccessful, the ALJ should have considered whether there was other evidence in the record that indicated that plaintiff's intellectual impairment began prior to age 22, such as plaintiff's poor work history, lack of a driver's license, difficulty living unassisted, lack of

romantic relationships, and history of special education. The ALJ committed harmful error in this case when he failed to discuss such evidence, despite multiple remands by this Court for further fact-finding, and *years* of delay for the plaintiff as this case proceeded through three administrative hearings and appeals.

Accordingly, the ALJ committed harmful error by failing to find that plaintiff had deficits in adaptive functioning before age 22, as required to meet the final prong of Listing 12.05(C). As a result, the Court finds that plaintiff meets all three requirements of the listing.

C.   <u>Plaintiff Is Entitled to a Finding of Disability and Remand for Award of Benefits for the Period of September 24, 2009 to January 22, 2014</u>

It is unnecessary to address plaintiff's remaining assignment of error regarding the ALJ's evaluation of the opinion of Anna Espiritu, M.D. Remand is required. As noted above, a remand for award of benefits is appropriate when (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *See Massanari*, 298 F.3d at 1076-77. Here, the ALJ erred by failing to find that plaintiff meets Listing 12.05(C). As a result, there are no outstanding issues that must be resolved, and there is nothing to be gained by sending this matter back for another hearing. Accordingly, this matter shall be remanded with instructions to award benefits.

//

//

1

VIII.    CONCLUSION

2          For the foregoing reasons, this case is REVERSED and REMANDED to the

3   Commissioner this case for a finding of disability.

4          DATED this 5th day of April, 2017.

5

6

_____
JAMES P. DONOHUE
7   Chief United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 21